590 A.2d 1240

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Donald POWELL, Appellee.**

Supreme Court of Pennsylvania.

Submitted Jan. 25, 1990.

Decided May 1, 1991.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Norman Gross, for appellant.

Steven J. Fishgold, for appellee.

John W. Packel, Chief, Appeals Div., Leonard N. Sosnov, Asst. Defender, for Amicus-Defender Assn. of Philadelphia.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

In 1987, Donald Powell, appellee, was found guilty of burglary, trespass, simple assault, and related crimes. After the adjudication of appellee's guilt, the trial court *sua sponte* granted the appellee's motion for a new trial, "in the

interest of justice." The Commonwealth appealed and the Superior Court affirmed the action of the trial court, concluding that since the issues raised on appeal were a mixture of law and fact, the Commonwealth lacked jurisdiction to appeal. We granted allocatur to address the following issues: first, whether the granting of a new trial under the rubric of "in the interest of justice" is a proper use of a trial court's discretionary powers; and second, whether such a rationale employed by a trial court in support of its decision is subject to appellate review and what is the scope and nature of such review.

On February 27, 1987, the case of Donald Powell, appellee, was scheduled for trial in the Court of Common Pleas of Philadelphia County. After waiving his right to a jury trial and proceeding at the last minute with substitute counsel, appellee was found guilty of burglary, 18 Pa.C.S. § 3502; trespass, 18 Pa.C.S. § 3503; simple assault, 18 Pa.C.S. § 2701; and related crimes.[1] On April 1, 1987, appellee made a *pro se* request for new counsel to raise the question of trial counsel's ineffectiveness. This request was granted after an evidentiary hearing on April 22, 1987. Appellee, through new counsel on May 19, 1987, filed a Motion in Arrest of Judgment and Motion for a New Trial *Nunc Pro Tunc* alleging ineffectiveness of trial counsel. On June 30, 1987, the trial judge considered the post-verdict complaints and determined that a new trial was warranted "in the interest of justice."

The Commonwealth's appeal from the grant of a new trial was quashed by the Superior Court which concluded that the order of a new trial "in the interest of justice" was a mixed question of law and fact and, therefore, unreviewable on appeal. 379 Pa.Super. 663, 545 A.2d 387. On July 19, 1989, this Court granted the Commonwealth's petition for allowance of appeal. 522 Pa. 611, 563 A.2d 497.

---

**1.** In addition, appellee was also charged with Theft by Unlawful Taking or Disposition, 18 Pa.C.S. § 3921, and Theft by Receiving Stolen Property, 18 Pa.C.S. § 3925. Also, an additional charge of Felony Robbery, 18 Pa.C.S. § 3701, was not pursued by the Commonwealth.

At the time of trial in this matter, the appellee was represented by the public defender's office. On the day of trial, the assigned public defender became ill and was replaced with substitute counsel. Substitute counsel requested a continuance in order to become familiar with the case and to prepare the defense. Counsel was advised by the court that no continuance would be given. Counsel went on record stating he was unprepared and had not met with the client and for that reason did not believe that he could competently represent appellee. Counsel thereupon again requested a continuance which again was denied.[2] When the judge began to administer the waiver of jury colloquy, the court was advised by appellee that he wished to be tried by a jury. The trial judge, however, "persuaded" appellee to waive his right to a jury trial after explaining the options available to him.[3] After a bench trial the same day, appellee was found guilty of all charges.

The Commonwealth insists upon framing the issue involved as one of counsel's ineffectiveness and asserts that

2. The record reflects these pre-trial discussions in detail. When denying defense counsel's request for a continuance the judge stated, "You're an able, effective, competent attorney. You've been in the P.D.'s office for a while. You can pick up a file, as can any other able and experienced attorney, you get a sense for what it's all about.... I certainly think that these cases should be disposed of today. Just because you don't want to be here, the rest of you us [sic] do ... all of these cases if we continue them, they won't be tried until early June." (N.T. 2/27/87, at p. 24a.)

3. The record indicates that the following discussion transpired regarding appellee's choice of a jury trial:
APPELLEE: ... I feel as though my chances would be better with a jury trial with me having 12 people listening to what I have to say. I would rather have 12 people listen to what I have to say than to just have one person listen to what I have to say.
THE COURT: Okay. We're going to revoke his bail* and would ask for a judge in the Career Criminal room, please ...
Mr. Powell, I don't know how long you've been in jail or why you've been up in custody, but I think if you had inquired among your friends (in jail), you would find that I'm one of the fairest judges out there and if you have something to say, out of the many judges available, ... I would be the one who would be listening to you.... Based on what I've observed today even before you got here in the courtroom, I'm revoking your bail and we're going to send you someplace in the Career Criminal. [sic]

such an issue of law is therefore properly reviewable by the courts.[4] The Superior Court in quashing the Commonwealth's appeal determined that the granting of a new trial "in the interest of justice" by the trial court, based upon a perception of its own unfair and prejudicial demeanor, was a factually oriented determination, thus precluding any right to appeal by the Commonwealth. We granted review because of the important jurisprudential questions raised in this matter. Accordingly, an initial discussion focusing upon the concept "in the interest of justice" is warranted to determine whether the granting of a new trial pursuant to such a theory was a valid exercise of the trial judge's discretionary power.

■ The rationale "in the interest of justice," employed to rectify errors which would otherwise result in unfairness,

> COUNSEL: May we sit and have a moment to discuss it with him?
> THE COURT: Certainly.
> (Counsel confers with the Appellee)
> THE COURT: Okay, Mr. Powell. What are you going to do?
> APPELLEE: I'm going to go to trial.
> THE COURT: When?
> APPELLEE: Right now.
> THE COURT: Okay. You've had a chance to talk to your lawyer?
> APPELLEE: Yes, I have.
> THE COURT: After talking to him are you making a voluntary decision to go to trial?
> APPELLEE: Yes, I am.
> THE COURT: Did he force you or did anyone force you?
> APPELLEE: No.
> THE COURT: Did anyone threaten you?
> APPELLEE: No.
>
> (N.T. 2/27/87 at p. 36a–37a)
> * This seems somewhat ambiguous, as it appears from the following that appellee was already in jail at the time.

4. In his post-trial motions, the appellee asserted as a grounds for relief the ineffectiveness of counsel. The concept of "in the interest of justice" as a grounds for granting a new trial, however, was raised by the court *sua sponte*. The Commonwealth is now insisting that relief can only be granted if the record establishes counsel's ineffectiveness. This is not the issue here and is irrelevant because the court did not predicate its ruling on the ineffectiveness of counsel claim but decided that relief was warranted "in the interest of justice." We are now called upon to determine whether the court properly exercised its discretion in this manner.

is deeply rooted in both federal jurisprudence and the common law of Pennsylvania. In the federal system this aspect of judicial discretion is evidenced in Rule 33 of the Federal Rules of Criminal Procedure. The first sentence of the Rule provides, "[T]he court on motion of a defendant may grant a new trial to him if required in the interest of justice." Fed.R.Crim.P. 33. The application of this discretionary provision has been held to apply broadly and its use may only be reviewed if there is evidence of manifest abuse. In *United States v. Narciso*, 446 F.Supp. 252, 304 (1977), the court stated that "the very words of the rule—'interest of justice'—mandate the broadest inquiry into the nature of the challenged proceeding." A judge granting a new trial under this Rule need assign no reason other than it is required in the interest of justice. *See, United States v. Smith*, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1946). The federal system has recognized that this power is not without restriction, especially when the action taken potentially intrudes upon the domain of the jury. In *Tennent v. Peoria & P.V. Ry. Co.*, 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944), the United States Supreme Court stated, "Courts are not free to reweigh the evidence and set aside a jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."

■ This concept of "interest of justice" has also been historically recognized as a viable ground for granting a new trial in this Commonwealth. A trial court has an "immemorial right to grant a new trial, whenever, in its opinion, the justice of the particular case so requires." *March v. Philadelphia & West Chester Traction Co.*, 285 Pa. 413, 416, 132 A. 355 (1926). *See also, Streilein v. Vogel*, 363 Pa. 379, 69 A.2d 97 (1949); *Frank v. W.S. Loiser & Co., Inc.*, 361 Pa. 272, 64 A.2d 829 (1949); *Frank v. Bayuk*, 322 Pa. 282, 185 A. 705 (1936). Indeed, as occurred in the instant matter, this Court has expressly approved of a trial court's granting a new trial, *sua sponte*, for the promotion of justice, if sufficient cause exists. *Common-*

*wealth v. Dennison*, 441 Pa. 334, 338, 272 A.2d 180, 182 (1971); *Getz v. Balliet*, 431 Pa. 441, 446, 246 A.2d 108 (1968); *see also, Bergen v. Lit Bros.*, 354 Pa. 535, 47 A.2d 671 (1946); *Trerotola v. Philadelphia*, 346 Pa. 222, 29 A.2d 788 (1943). Where it will result in the attainment of justice, a trial court may grant a new trial without the initiation of the defendant. *Fisher v. Brick*, 358 Pa. 260, 56 A.2d 213 (1948); *Commonwealth v. Jones*, 303 Pa. 551, 154 A. 480 (1931).

█ In *Commonwealth v. Myma*, 278 Pa. 505, 508, 123 A. 486 (1924), we stated:

> [T]he judge occupies an exalted and dignified position; he is the one person ... from whom the litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box and at counsel table. To depart from the clear line of duty through questions, expressions or conduct, contravenes the orderly administration of justice. It has a tendency to take from one of the parties the right to a fair and impartial trial, as guaranteed under our system of jurisprudence.

*Id.*, 278 Pa. at 508, 123 A. 486.

It is the trial judge's review of the conditions and activity surrounding the trial which leaves him or her in the best position to make determinations regarding the fairness of the process and its outcome. It is apparent, therefore, if a trial court determines that the process has been unfair or prejudicial, even where the prejudice arises from actions of the court, it may, in the exercise of its discretionary powers, grant a new trial "in the interest of justice."

The right of a court in an appropriate case to provide relief under the rubric of "interest of justice" cannot at this stage of the development of our jurisprudence be seriously questioned. The challenge instantly raised is whether its invocation here was proper. Subsumed in that question is

the further issue as to whether such a ruling is subject to review.[5]

■ Recognizing that the concept of "in the interest of justice" is merely an identification of a portion of the vast reservoir of discretionary powers vested in the trial court, the standard of review to be employed in testing the appropriateness of its use in a given matter is the well recognized "abuse of discretion standard." *Commonwealth v. Pronkoskie,* 498 Pa. 245, 445 A.2d 1203 (1982); *Commonwealth v. Hinchcliffe,* 479 Pa. 551, 388 A.2d 1068 (1978); *Commonwealth v. Dennison,* 441 Pa. 334, 272 A.2d 180 (1971); *In Re Mackarus Estate,* 431 Pa. 585, 246 A.2d 661 (1968); *Commonwealth v. Hartman,* 383 Pa. 461, 119 A.2d 211 (1956); *Millenson v. City Stores Co.,* 382 Pa. 39, 114 A.2d 80 (1955); *Commonwealth v. Helwig,* 184 Pa.Super. 370, 134 A.2d 694 (1957).

■ This concept of "in the interest of justice" is merely a recognition of the trial court's discretionary power to ensure the fairness of the proceedings during the adjudicatory stage. An arbitrary and unsupported use of this power by a trial court to avoid justifying its ruling would be clearly inappropriate. As this Court stated in *Beal v. Reading Company,* 370 Pa. 45, 87 A.2d 214 (1952), "mere conclusions such as 'interest of justice' are insufficient. All judicial process necessarily is in the interest of justice. Such conclusion, *in the absence of amplification,* could well serve as a cloak or shield for abused judicial discretion." 370 Pa. at 49, 87 A.2d at 216. (Emphasis added.)

**5.** It is this latter question that undoubtedly inspired the Commonwealth to insist upon framing the issue as one of ineffectiveness of counsel where its right to review has been clearly delineated. The Commonwealth may appeal from a ruling predicated upon a question of law which controlled the outcome of the case. *Commonwealth v. Goldhammer,* 512 Pa. 587, 517 A.2d 1280 (1986); *Thompson v. City of Philadelphia,* 507 Pa. 592, 493 A.2d 669 (1985); *Commonwealth v. Marks,* 442 Pa. 208, 275 A.2d 81 (1971); *Commonwealth v. Melton,* 402 Pa. 628, 168 A.2d 328 (1961); *Commonwealth v. Antonini,* 165 Pa.Super. 501, 69 A.2d 436 (1949). Ineffectiveness of counsel is such a question of law. *See, Commonwealth v. Jones,* 370 Pa.Super. 591, 537 A.2d 32 (1988).

■ In the instant matter, the record reflects that the trial court, albeit unintentionally, coerced the appellee to waive his fundamental right to a jury trial and forced him to proceed with counsel who was admittedly ill prepared to present an effective or competent defense. *See supra* notes 2–3. The record reflects that the appellee was intimidated into waiving his right to a jury trial. It is unquestioned that all persons have an unfettered right to a jury trial, and the events involved in this matter suggest that a coercive atmosphere was created which deprived appellee of that right. Additionally, the appellee was also forced to rely on recently substituted counsel, who admitted he was unfamiliar with the case,[6] which compromised the appellee's basic right to receive adequate representation and to have his choice of counsel in whom he had confidence.[7] In this

6. In volunteering to the court that he was unprepared to proceed that day to trial, the newly substituted counsel stated the following to the Court:

"Your Honor, I would just like to make it part of the record that the assigned attorney ... who was assigned these cases a couple weeks ago and given last week off to prepare them, that is to familiarize herself with the case and discuss the case with the clients and to interview witnesses and get a good feel about what the cases were about. She is sick today and I got these cases early this morning about ten minutes after 9:00 [and] met with my clients today for the first time,.... I don't feel that that's adequate preparation.... (N.T. 2/27/87 at p. 23a)

Even the most experienced trial counsel regardless of his compentency needs to be familiar with the intricacies of any case. The substitution of one attorney for another attorney from the same office does not lead to an automatic presumption of competency on behalf of the substituted counsel.

As the Amicus Curiae stated in its brief on behalf of appellee, this Court in the past has emphasized that lawyers in the same firm or office "are not fungible commodities who can be substituted at will." and that a court, because of the interest in obtaining a disposition, may not unfairly force substitute counsel to trial. *See, e.g., Commonwealth v. Ross,* 465 Pa. 421, 350 A.2d 836 (1976); *Budget Laundry Co. v. Munter,* 450 Pa. 13, 298 A.2d 55 (1972).

7. It is also fundamental that all individuals have a right to competent counsel. Pa.Const. art. 1, § 9; *Commonwealth v. Bunch,* 466 Pa. 22, 351 A.2d 284 (1976); *Commonwealth v. Wideman,* 460 Pa. 699, 334 A.2d 594 (1975); *Commonwealth v. Kennedy,* 451 Pa. 483, 305 A.2d 890 (1973); *Commonwealth v. Sliva,* 415 Pa. 537, 204 A.2d 455 (1964). While a defendant's impecunious nature may limit his options in

case, the record reflects sufficient concern as to the preparedness of trial counsel and as to the voluntariness of the waiver of jury to support the exercise of discretion in this instance.

■ While the scope of a trial court's discretionary powers to deal with the factual circumstances it confronts is broad, it is not unlimited. It necessarily follows that the requirement that appellate courts defer to that exercise of discretion is not without limitation either. The propriety of such an exercise of discretion may be assessed by the appellate process when it is apparent there was an abuse of that discretion.[8] *Bellettiere v. Philadelphia,* 367 Pa. 638, 642, 81 A.2d 857, 858 (1951). *See e.g., Foster v. Waybright,* 367 Pa. 615, 80 A.2d 801 (1951); *Chapple v. Sellers,* 365 Pa. 503, 504–505, 76 A.2d 172, 173 (1950); *Rosanoff v. Duquesne University,* 365 Pa. 121, 123, 74 A.2d 172, 173 (1950); *Held. Admnx. v. Van Tiggelen,* 364 Pa. 317, 319, 72 A.2d 73, 74 (1950); *Lambert v. Durallium Products Corporation,* 364 Pa. 284, 286, 72 A.2d 66, 67 (1950); *Peoples First National Bank & Trust Co., Administrator, v.*

choosing counsel, we have never recognized that his poverty should compromise the right to competent counsel.

**8.** It is well settled that a reversible error occurs when an abuse of discretion is committed.

"Abuse of discretion" is synonymous with a failure to exercise a sound, reasonable, and legal discretion. It is a strict legal term indicating that appellate court is of opinion that there was commission of an error of law by the trial court. It does not imply intentional wrong or bad faith, or misconduct, nor any reflection on the judge but means the clearly erroneous conclusion and judgment—one is that clearly against logic and effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing; an improvident exercise of discretion; an error of law. Black's Law Dictionary, 5th Ed. (1979). Consequently, the many adjectives used to modify the term "abuse of discretion", *Atene v. Lawrence,* 456 Pa. 541, 545, 318 A.2d 695, 697 (1974) ("gross"); *Bellettiere v. Philadelphia,* 367 Pa. 638, 642, 81 A.2d 857, 858 (1951) ("palpable"); *Frank v. W.S. Losier & Co., Inc., et al.,* 361 Pa. 272, 276, 64 A.2d 829, 831 (1949) ("clear"); *Bailey v. C. Lewis Lavine, Inc.,* 302 Pa. 273, 277, 153 A. 422, 423 (1931) ("manifest"); *Cuteri v. West Penn Rwys. Co.,* 305 Pa. 347, 350, 157 A. 686, 687 (1931) ("unmistakable"), do not alter its meaning.

*Christ,* 361 Pa. 423, 428–29, 65 A.2d 393, 396 (1949); *Samuels v. Johnson,* 355 Pa. 624, 628, 50 A.2d 670, 672 (1947); *Hoban v. Conroy,* 347 Pa. 487, 489, 32 A.2d 769, 770 (1943); *Weinfeld v. Funk,* 342 Pa. 160, 20 A.2d 206 (1941); *Reese v. Pittsburgh Rwys. Co.,* 336 Pa. 299, 9 A.2d 394 (1939); *Marko v. Mendelowski,* 313 Pa. 46, 47, 169 A. 99, 100 (1933); *Williams, Receivers, v. Southern Mutual Insurance Co.,* 312 Pa. 114, 121–22, 166 A. 582, 585 (1933); *Cuteri v. West Penn Rwys. Co.,* 305 Pa. 347, 350, 157 A. 686, 687 (1931); *Bailey v. C. Lewis Lavine, Inc.,* 302 Pa. 273, 277, 153 A. 422, 423 (1931); *March v. Philadelphia & West Chester Traction Co.,* 285 Pa. 413, 417, 418, 132 A. 355, 357 (1926).

From the foregoing, we conclude that the trial court, in assessing its own conduct and in arriving at the conclusion that the totality of circumstances was unfair to the appellee and compromised his right to adequate legal representation, was strongly supported by the record. As such, the granting of a new trial to the appellee was a proper exercise of the court's discretionary power in order to preserve the fairness of the process. Indeed, the grant of a new trial in the instant matter was occasioned by the judge's self-criticism, a brave act which, in light of the immediate circumstances, properly restored to the appellee those safeguards guaranteed to all individual defendants.

Accordingly, the order of the Superior Court is affirmed.